# LEVIN-EPSTEIN & ASSOCIATES, P.C.

60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792.0046 • E: Joshua@levinepstein.com

March 7, 2022

*Via ECF*
The Honorable Sarah L. Cave, U.S.M.J.
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Thomas v. Arts in Common LLC et al*
       **Case No.: 1:21-cv-06948-GHW**

Dear Honorable Magistrate Judge Cave:

This law firm represents Plaintiff Daria Thomas (the "Plaintiff") in the above-referenced action. This letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $12,000.00. By notice filed on February 9, 2022, the parties advised the Court that they had reached a settlement of the action. [Dckt. No. 32].

A copy of the executed Settlement Agreement is attached hereto as "**Exhibit A**."

A Stipulation of Dismissal With Prejudice is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

## I.    Procedural History.

On August 18, 2021, Plaintiff commenced the instant action against, *inter alia*[1], Defendants, alleging minimum wage, record keeping, and unlawful deduction violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 190, 650 *et seq*. ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA").

Plaintiff was employed as a server at Defendants' restaurant located at 210 West 118th Street, New York, NY 10026 ("The Cecil Steakhouse") from on or around June 1, 2021 through and including July 24, 2021. [*Am. Compl.*at ¶ 7]. Plaintiff asserts that from on or around June 1, 2021 through and including July 12, 2021, she worked for worked four (4) to five (5) days per week, approximately eight (8) hours each day, for a total period of approximately thirty-two (32) to forty (40) hours during each of the weeks, respectively. [*Id*. at ¶ 43]. Plaintiff further asserts that from approximately July 12, 2021 through and including July 24, 2021, Plaintiff worked two (2) to three (3) days per week, approximately eight (8) hours each day, for a total period of approximately sixteen (16) to twenty-four (24) hours during each of the weeks, respectively. [*Id*.

---

[1] Plaintiff's Amended Complaint, filed on August 18, 2021 (the "Amended Complaint", or "*Am. Compl.*") [Dckt. No. 4], removed former defendant Richard Parsons from the action. Plaintiff further filed a notice of voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(A)(i) as against former defendant Harlem Jazz Enterprises LLC. [*See* Dckt. No. 25].

at ¶ 44]. During her employment, Plaintiff asserts that she was paid at a rate of $10 per hour. [*Id.* at ¶ 45].[2]

According to the operative Amended Complaint, Defendants also required Plaintiff to attend mandatory training shifts, for which she was not compensated. [*Id.* at ¶ 47]. The Amended Complaint also alleged that Defendants engaged in a policy and practice commonly known as "time shaving". [*Id.* at ¶ 48]. According to the Amended Complaint, Defendants would automatically deduct meal breaks from Plaintiff's, and all similarly situated individuals', schedules, regardless of whether some or all of the time was used for a meal break. [*Id.*].

Defendants deny each of these claims and further contend that Plaintiff worked far fewer hours than alleged by Plaintiff. The Defendants further asserted that the records of payment and time records undermined the Plaintiff's factual contentions and allegations.

On or around January 27, 2022, Defendants produced payroll records, time records and other documents concerning Plaintiff's employment.

On or around February 8, 2022, after multiple rounds of negotiations, the parties reached a resolution in principle to settle this matter for a total sum of $12,000.00 (the "Settlement Amount") to be paid out in one (1) lump sum payment.

The settlement is fair, reasonable, and the product of arm's length negotiations between counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

## II.    The Settlement Agreement is Fair and Reasonable.

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable

---

[2] Plaintiff alleges that Defendants failed to pay her any wages for the week of July 19, 2021. [*Id.* at ¶ 46].

compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp*., 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### A. The Settlement Sum is Substantial and Fair Given the Plaintiff's Range of Recovery.

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiff's proposed ultimate recovery represents approximately 95.04% of Plaintiff's estimated maximum recovery. See *Chowdhury v. Brioni America, Inc*., 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA Plaintiff's maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp*., 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA Plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery)

The method and formula for the derivation of the Plaintiff's reasonable range of recovery assumes the following, after considering Defendants' documentation of hours worked and compensation received:

(i)     Plaintiff would have a low likelihood of recovery for the allegations of unpaid wages given that Defendants produced time and payroll records for that period;

(ii)    Plaintiff worked an average of thirty-six (36) hours per week, each week, from June 1, 2021 through and including July 20, 2021.

(iii)   Plaintiff should have been paid at the prevailing minimum wage rate of pay of $15 per hour.

(iv)    Plaintiff was pad $10 per hour[3].

Taking these assumptions into account, the undersigned computed that the unpaid minimum wage yielded the aggregate amount of $1,280.00. The undersigned yielded this amount by subtracting Plaintiff's assumed lawful wages (minimum wages), by Plaintiff's paid wages.

The Settlement Agreement requires that Defendants pay Plaintiff a settlement sum in the amount of $12,000 to resolve the case, payable in one lump sum payment. After attorneys' fees and expenses, Plaintiff will receive payments totaling $7,045.15.

Plaintiff believes that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

---

[3] Defendants assert that Plaintiff was paid at the rate of $15.00 per hour less the $5.00 tip credit permitted by the New York Hospitality Industry Wage Order.

The number of overtime hours Plaintiff worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult.  The parties engaged in informal discovery to address various issues related to liability and damages. In the course of informal discovery, Defendants provided the dated time and payroll records that were maintained during Plaintiff's employment. These records potentially compromised Plaintiff's claims given that those records were created by "punch-in" and "punch-out" entries generated by Plaintiff.  Defendants' production of employment records if credited, appear to contradict Plaintiff's claims.

The undersigned law firm conducted an analysis based on the six-year maximum compensable period of time under the NYLL while taking into consideration Defendants' production of records. Through the course of the informal discovery process, the key issue that evolved concerned whether or not Plaintiff was paid appropriate minimum wage, for all hours worked, which Plaintiff calculated to be $1,280.

The net proceeds of the Settlement Agreement at the very least compensate Plaintiff for approximately 95.04% of Plaintiff's estimated maximum recovery for unpaid wages, liquidated damages, wage statement violations, wage notice violations, and pre-judgment interest.[4]

Given the risks these issues present, the Settlement Amount is reasonable.

**B.  The Settlement Agreement Avoids the Incurrence of Additional Expenses.**

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiff. In that regard, Defendants allege that Plaintiff worked substantially fewer hours than alleged. During the informal discovery phase of this case, Defendants relied on time sheets and paystubs, which Plaintiff rejected as inaccurate.  If the trier of fact determined that Plaintiff worked fewer hours than alleged, it is likely that the minimum wages due to Plaintiff would be greatly reduced and, in fact, there is the possibility she would not be owed any wages.  Proceeding to trial would consume significant amounts of time and resources, and Plaintiff face the hurdles of rebutting Defendants' time records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The continued litigation of this case would necessitate no less than four (4) depositions, and a trial. The associated costs the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

---

[4] Plaintiff's computation of estimated maximum recovery does not account for pre-judgment interest of attorneys' fees.

## C. The Seriousness of the Litigation Risk Faced by Plaintiff is High.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on the amount of hours allegedly worked, the amount of alleged underpayment of minimum wages allegedly owed.

Defendants furnished time records and payroll records for June 2021 and July 2021. Plaintiff, in order to succeed on the merits for this period, would have to rebut the presumption that Defendants did not pay Plaintiff in accordance with NYLL and/or the FLSA. Where, as here, Plaintiff has produced no documentation of her hours worked or compensation received for this period, and Defendants have produced records, Plaintiff's burden on this rebuttable presumption is high. *Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

## D. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Mediation.

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel demonstrate there was no fraud or collusion. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiffs' counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA plaintiffs); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the

"wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.*, Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

Moreover, the Settlement Agreement protects Plaintiff from the risk of default by requiring Defendants to execute a Settlement Agreement providing for recovery of attorneys' fees in the event of default. *See* Ex. A.

### III.    The Allocation for Attorneys' Fees and Costs is Reasonable.

As Plaintiff's counsel, the undersigned agreed to be paid a 1/3 contingency fee, agreed to by Plaintiff in her Retainer Agreement, which is reduced to writing and is signed by her, a copy of which is attached as "**Exhibit B**".

Disbursements we have paid are limited to service of process ($1,002.08) and mailing charges for a pre-suit demand letter ($28.00), for a total of $1,432.80 in costs. The undersigned deducted that amount from the Settlement Amount, and divided the difference by three, with one-third for legal fees and two thirds to Plaintiff. Proof of disbursements are included in "**Exhibit C**". A true and correct copy of Plaintiff's counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as **Exhibit "D"**.

The contingency fee in this case should be approved because it is the fee Plaintiff agreed upon in their retainer agreement in their dominant language. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.").

Moreover, the one-third contingency is the fee which courts in this District consider to be presumptively fair in FLSA cases. *See, e.g., Castillo v. Cranes Express Inc.*, 2018 WL 7681356, at *5 (E.D.N.Y. 2018) (same); *Vidal v. Eager Corp.*, 2018 WL 1320659, at *2 (E.D.N.Y. 2018); *Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. 2017); *Hdir v. Salon de Quartier*, 2017 WL 8950426, at *2 (E.D.N.Y. 2017) ("Courts in this district using the percentage method have found a fee award of one third of the settlement amount to be reasonable".) (*citing Romero v. Westbury Jeep Chrysler Dodge, Inc.*, 2016 WL 1369389, at *2 [E.D.N.Y. 2016]); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081 at *3 (E.D.N.Y. 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277 at *2 (E.D.N.Y. 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit");

Based on this, the requested fee of one-third of Plaintiff's recovery should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

**IV.     The Agreement Satisfies All Other Factors Considered for Approval.**

The terms of the Settlement Agreement are consistent with *Cheeks*. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions. The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law and following extensive discovery.

In sum, the settlement is fair and reasonable, providing Plaintiff with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By: */s/ Jason Mizrahi*
         Jason Mizrahi, Esq.
         60 East 42nd Street, Suite 4700
         New York, NY 10165
         Tel. No.:  (212) 792-0048
         Email: Jason@levinepstein.com
         *Attorneys for Plaintiff*

7